IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Holly L. Thacker, M.D., | ) CASE NO. 1:16 CV 2706 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| Cuyahoga Heights Board of Education, et al., | ) MEMORANDUM OPINION |
| Defendants. | ) AND ORDER |

This matter is before the Court on the Motion of Defendants Cuyahoga Heights Board of Education and the Cuyahoga Heights Local School District to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] (ECF #10) Since the filing of the Motion to Dismiss Plaintiff has filed a Notice of Voluntary Dismissal, dismissing the School District without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). (ECF #50) The motion is fully briefed and ready for decision.

## FACTS[2]

Plaintiff, Dr. Holly Thacker, has been a member of the Cuyahoga Heights Board of Education (the "Board") since January 2010. She was elected to the role of President of the Board in January 2016. Dr. Thacker's three children attended and graduated from the Cuyahoga Heights Local School District ("CHLSD" or "School District"). Dr. Thacker alleges that she began emailing CHLSD as a parent around 2003. In early 2011, Dr. Thacker brought evidence to the

---

[1] The Motion to Dismiss was mistakenly dismissed as moot by marginal order on February 2, 2017, but was reinstated on March 20, 2017. (ECF #42)

[2] The factual allegations are taken from the Plaintiff's complaint and will be accepted as true for the purposes of this motion.

authorities which started an investigation into an embezzlement scheme that resulted in federal convictions. (Compl. ¶ 14) As a result of the clean-up after the embezzlement there has been turnover of several Board of Education members and the Superintendent, Defendant Thomas Evans, was placed on administrative leave on August 2, 2016 to investigate allegations against him, as well as allegations against former School District treasurer Defendant Joy Clickenger and former District employee Defendant Kathy Martin. (Compl. ¶ 15). Plaintiff asserts that Board member Defendant Melynda Schuckert has called for the resignation of certain Board members, including Dr. Thacker. (Id.)

Sometime after January 2016, Defendant Schuckert made a public records request for all business related emails to or from Dr. Thacker and others. (Compl. ¶ 17) On February 3, 2016, her last day of work, Defendant Joy Clickenger, who was responsible for the proper dissemination of public records, directed Defendant David Wallis, the District's IT director, to collect the requested emails and to disseminate emails from 2003 and forward to the public without regard to the content or subject of the emails. (Compl. ¶¶ 11, 18) Mr. Wallis ran a search of all emails from Dr. Thacker and others that were contained on the Board of Education/School District servers and created links which he forwarded to Ms. Clickenger. Plaintiff alleges that none of the individual defendants complied with Board policy regarding public records requests. (Comp. ¶ 19) Plaintiff further alleges that the emails were turned over by the individual defendants, in their individual and official capacities, without any review, to Board member Schuckert who then turned the emails over to members of the public. (Compl. ¶ 20).

Based upon these allegations, Plaintiffs asserts claims of violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 (Count One) and violation of the Wire Tap Act,

18 U.S.C. § 2511 (Count Two) against all of the individual Defendants and the Board. Plaintiff alleges that the Board would be liable for violation of both federal statutes under a theory of respondeat superior. Plaintiff also asserts state law claims of Invasion of Privacy (Count Three) and Civil Conspiracy. (Count Four). In her opposition to the Board's Motion to Dismiss, Plaintiff clarifies that she is not asserting the state law claims against the Board. Thus, the only claims asserted against the Board are the violations of the federal Wire Tap Act and the Stored Communications Act based upon a theory of respondeat superior.

## STANDARD OF REVIEW

In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.' " *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir.2011), *cert. denied*, 132 S.Ct. 1583, (2012) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## DISCUSSION

The Board moves to dismiss the claims against it under the Wiretap Act and the SCA asserting that there is no secondary liability under either statute.

The SCA provides in relevant part that whoever:

> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility;
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished....

28 U.S.C.§ 2701(a). The SCA further allows any person injured by a violation of the SCA to bring a civil action against the "person or entity" who "knowingly and intentionally" violated the Act. 18 U.S.C. § 2707(a).

Several courts have determined that the SCA does not create or recognize a cause of

-4-

action for secondary liability claims such as conspiracy claims or aiding and abetting claims. See *Vista Marketing, LLC v. Burkett*, 999 F.Supp.2d 1294, 1296 (M.D. Fla. 2014); *Council on American-Islamic Relations Action Network, Inc., v. Gaubatz*, 891 F.Supp.2d 13, 26-27 (D.D.C. 2012); *Garback v. Lossing*, No. 09 cv 12407, 2010 WL 3733971m at *6 n. 6 (E.D. Mich. Sept. 20, 2010) (Congress did not expressly provide for secondary liability violations of the SCA); *Jones v. Global Info. Grp., Inc.*, No.3:06-00246 JDM, 2009 WL 799745 at *3 (W.D. Ky Mar. 25, 2009)(Since Congress did not criminalize the actions of aiding and abetting violations of § 2701 and § 2707 authorizes awards of damages to private parties but does not mention aiders or abettors or other secondary actors, no secondary civil liability will be inferred by court.)

The Wire Tap Act, provides in pertinent part as follows:

> (1) Except as otherwise specifically provided in this chapter[,] any person who—
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished [by a fine or by imprisonment.]

18 U.S.C. § 2511(1)(a). Section 2511 thus criminalizes the intentional interception of an electronic communication. *See id.* A separate section of the Wiretap Act then provides a private cause of action for persons who are victimized by such criminal conduct:

> (a)... any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). See *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). Courts have determined that a plaintiff may maintain a civil cause of action under this law only against the individual who

actually participated in intercepting the communication and not against an individual who procured another individual to intercept a communication in violation of the law. See *Gaubatz, supra*, 891 F.Supp.2d 13, at 23-24; *Boje v. Remington*, No. 15 CV 1114, 2016 WL 2858835, at *2 (E.D. Wis. May 16, 2016)(no secondary liability under the Wire Tap Act).

Based upon this precedent, the Board asserts that respondeat superior is a common law form of secondary liability which is also prohibited under both Acts. However the case cited by the Board, *AT & T v. Winback & Conserve Program*, 42 F.3d 1421 (3d Cir. 1994) highlights the differences between the prohibited secondary liability discussed in the Wire Tap and SCA cases cited by the Board, all of which involved aiding and abetting or conspiracy claims, and common law theories of vicarious liability or respondeat superior. In *AT & T*, the Court discussed whether the district court was correct in importing common law doctrines of agency and vicarious liability into Section 43(a) of the Lanham Act. The Court analyzed security law cases where the Supreme Court refused to find parties liable for aiding and abetting the violation of federal securities laws. The Court noted that aiding and abetting is not a well settled mechanism for imposing civil liability, but rather applies to criminal offenses where the focus is on a defendant's substantial and knowing assistance in the commission of a tort or crime. Thus, "by definition then, the act rendered unlawful under an aiding and abetting theory is different than the act rendered unlawful by the underlying tort." Id. at 1430. However, "courts imposing liability on agency theories are not expanding the category of affirmative conduct proscribed by the relevant statute; rather, they are deciding on whose shoulders to place responsibility for conduct indisputably proscribed by the relevant statute." Id. at 1430-31. Finally, in approving the application of common law agency principles to §43(a) of the Lanham Act, the Court emphasized the fact that liability cannot be

imposed in some situations without reference to agency principles– a corporation can only act through its agents and therefore can only be bound through application of agency principles.

Moreover, several district courts within the Sixth Circuit have explicitly or implicitly approved the application of respondeat superior principles in cases asserting violations of the SCA and/or Wire Tap Act. In *Lazette v. Kulmatycki*, 949 F.Supp.2d 748 (N.D. Ohio 2013), defendant Verizon implicitly recognized that its employee's actions which purportedly violated the SCA were within the scope of his employment with Verizon and in furtherance of its interest. Judge Carr denied Verizon's motion to dismiss the SCA claim noting "Defendants' motion does not challenge plaintiff's actual theory of liability – namely, that Verizon is vicariously liable for Kulmatycki's actions, much less shown that conventional master-servant liability law does not apply. Id. at 759-760. Similarly, in *Evans v. O'Reilly Automotive, Inc.*, 2011 WL 6740570 (E.D. Tenn. 2001) the Court applied the doctrine of respondeat superior to Plaintiff's SCA claim, granting the defendant employer's motion to dismiss on the grounds that the employee who allegedly violated the SCA was not acting within the scope of his employment. In *Cardinal Health 414, Inc. v. Adams*, 582 F.Supp.2d 967 (M.D. Tenn. 2008), the Court said that although a defendant could be liable for an agent's violations of the SCA the Court found that the facts in this case did not support an agency relationship.

A district court in the Seventh Circuit, although denying summary judgment on other grounds, found that the plaintiff successfully showed that the defendant employer (a church) could be vicariously liable as a principal or employer for its minister's violation of the SCA. *See Fischer v. Mt. Olive Lutheran Church*, 207 F.Supp.2d 914 (W.D. Wis. 2002). Similarly, courts in the following cases applied the concepts of vicarious liability but determined that the plaintiff had

-7-

failed to sufficiently plead or show that the defendant was vicariously liable as a principal or employer for another's violation of the SCA. None of these courts found that vicarious liability was prohibited under the SCA. *See Larson v. Hyperion Intern. Technologies, LLC*, 494 Fed. Appx. 493 (5th Cir. 2012)(unreported); *Larson v. Liberty Mut. Fire Ins. Co.*, 2012 WL 93181 (D. Haw. 2012)(unreported); *Murphy v. Spring*, 2014 WL 5683906 (N.D. Okla. 2014; *Butera & Andrews v. Int'l Business Machines Corp.*, 456 F. Supp. 2d 104 (D.D.C. 2006). Based upon this precedent, the Court finds that vicarious liability under the SCA and the Wire Tap Act may be asserted upon a showing of respondeat superior or agency principles. As the Board does not contend that Plaintiff has failed to state or support her claim of respondeat superior, the Court declines to dismiss Counts One and Two at this time for the alleged lack of secondary liability.[3]

In its Reply Brief in support of its Motion to Dismiss, the Board raises additional reasons why Counts One and Two should be dismissed.[4] First, the Board argues that the SCA is meant to stop unauthorized access to electronic information stored on servers. Here, Plaintiff asserts in her Complaint that pursuant to a public records request, some or all of the individual Defendants collected or caused to be collected, Plaintiff's and others emails from 2003 forward that were

---

[3] The Board does not argue that the individual defendants were not acting within the scope of their employment in collecting or disclosing the emails and the Court makes no finding on that issue.

[4] Plaintiff did not seek leave to file any supplemental response to the Board's Reply Brief to address the Board's additional arguments for dismissal. Plaintiff's failure to submit a response to the new arguments, or to request leave to submit a response, does not prevent the Court from considering the arguments. Further, Plaintiff's throw away request at the end of its opposition brief requesting the Court to "order an amendment of the complaint" should the Court determine that the Complaint is deficient in any fashion, does not constitute a motion for leave to amend the complaint which would include a copy of the proposed amended complaint.

stored on the Board's/ Districts's computer servers and disseminated to Board member Schukert without proper review.[5] There is no allegation that the Board, or its employees or agents, accessed Plaintiff's emails from other servers or sources. As such the Board asserts that the collection of emails in response to a public records request from its own server was authorized and falls within the subsection (c) exception to the SCA. The SCA does not prohibit the provider from accessing emails stored on the provider's server. See 18 U.S.C. § 2701 (c) which provides in relevant part:

(c) Exceptions.–Subsection (a) of this section does not apply with respect to conduct authorized--

(1) by the person or entity providing a wire or electronic communications service

While the Sixth Circuit has not interpreted subsection (c), the Third Circuit granted summary judgment in favor of defendant Nationwide finding that the company's search of its own server to find emails of a former employee did not violated the SCA because the search fell within the subsection (c) exception to § 2701(a) because plaintiff's email was stored on Nationwide's system which Nationwide administered. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-115 (3d Cir. 2003). *See also, Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996)(court found that Reno police department could, without violating the SCA, retrieve pager text messages stored on the police department's computer system because the department "is the

---

[5] While Plaintiff is concerned about the disclosure of private information in her emails which were stored on the Board's/District's servers, the fact that the Board's public records policy was not followed or the emails were made public does not violate Section 2701 (SCA). "Section 2701 prohibits only unauthorized access and not the misappropriation or disclosure of information. ... Section 2701 outlaws illegal entry, not larceny."*Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000).

provider of the 'service' and "service providers [may] do as they wish when it comes to accessing communications in electronic storage."

Based upon Plaintiff's allegations in her Complaint, it is clear that she is asserting that the Board searched its own computer system for the emails that were allegedly disclosed. Accordingly, the Board fits squarely within the § 2701(c)(1) exception to any liability under § 2701(a). As such, the Board's motion to dismiss Count One–violation of the Stored Communications Act, is granted.

Finally, the Board argues that the Wire Tap Act is meant to stop the unauthorized intercept of electronic messages that are being transmitted. See 18 U.S.C. § 2511(1)(a); § 2510(4) defining "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Courts, including Judge Carr in *Lazette, supra,* have determined that § 2510(4) does not encompass stored electronic communications. 949 F.Supp.2d at 760; *Fraser v. Nationwide, supra,* 352 F.3d 107, 113. Further, an intercept under the Wiretap Act must occur contemporaneously with transmission. *Fraser,* at 113; *Luis v. Zang,* supra, 833 F.3d 619, 627 (6th Cir. 2016)(the term "intercept" as defined in § 2510(4) applies only to electronic communications, not to electronic storage. Once a transmission has ended, the communication ceases to be a communication and becomes part of electronic storage.)

Plaintiff uses the word "intercept" in Count Two of her claim for violation of the Wire Tap Act: "Defendants Evans, Schuckert, Clickenger, and Wallis intentionally intercepted Plaintiff's electronic communications without her consent thereby violating 18 U.S.C. § 2511(1)(a)." (Compl. ¶ 29) However, the operative facts asserted by Plaintiff in the body of her complaint show that she is complaining about the collection of emails stored on the District's servers from as far

back as 2003. Plaintiff asserts that Defendant Schuckert made a public records request for all business related emails to or from Plaintiff and others; that Defendant Clickenger, on her last day of employment with the District directed Defendant Wallis to collect the requested emails and disseminate emails from 2003 and forward to the public without regard to content or subject of the emails. She asserts that Defendant Wallis ran a search and collected all of the emails of Plaintiff and others that were contained on the Board's servers, created links and forwarded them to Ms. Clickenger. Defendants then turned over all of the emails to Defendant Schuckert. See Complaint, ¶¶ 17-20. None of the factual allegations asserted by Plaintiff support any allegation that the Board contemporaneously intercepted any of Plaintiff's emails. Rather, her factual assertions make clear that any emails or other documents disclosed by Defendants were collected from documents stored on the District's servers. These factual allegations do not allege, much less support, a finding that any emails were intercepted as required by the Wire Tap Act. As such, the complaint fails to state a claim against the Board for violation of the Wire Tap Act. *See Lazette*, 949 F.Supp.2d 748 (dismissing Wire Tap Act claim because there was no intercept of electronic transmissions.)

## CONCLUSION

For the reasons set forth above, the Motion of Defendant Cuyahoga Heights Board of Education to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF #10) is granted. All claims against the Board are hereby dismissed. IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: May 19, 2017